IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JAMES LEDFORD, | ) | Civil Action No. 3:07-1148-GRA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") to terminate his Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On September 16, 1994, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially, but were granted by reconsideration determination of May 17, 1995, with an onset date of disability of June 24, 1994. However, based on continuing disability review, it was determined that Plaintiff's disability ceased in April 1998. Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearings held January 19 and December 13, 2001, at which Plaintiff appeared and testified, the ALJ issued a decision dated May 31, 2002, denying benefits. On June 2, 2005, the Appeals Council remanded the case for rehearing as the audiotape from the January 19, 2001 hearing was lost. On October 26, 2005, another hearing was held, and

the ALJ issued an unfavorable decision on November 18, 2005. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-six years old at the time he was found to have medical improvement (and his benefits ceased). He has a tenth-grade education and past relevant work as a carpenter and as a component assembler. Plaintiff alleges disability since June 15, 1994, due to residual effects of a "crushed" hip, back surgery, seizures, stroke, and depression.

The ALJ found (Tr. 31-32):

1.     THE CLAIMANT WAS FOUND TO BE DISABLED BEGINNING JUNE 25, 1994.

2.     THE CLAIMANT MET THE NON-DISABILITY REQUIREMENTS FOR A PERIOD OF DISABILITY AND DISABILITY INSURANCE BENEFITS SET FORTH IN SECTION 216(I) OF THE SOCIAL SECURITY ACT THROUGH JUNE 30, 2000, BUT NOT THEREAFTER.

3.     THE CLAIMANT HAS NOT ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY SINCE THE ALLEGED ONSET OF DISABILITY.

4.     THE CLAIMANT'S IMPAIRMENTS PRESENT AS OF MAY 17, 1995, THE TIME OF THE MOST RECENT FAVORABLE DECISION THAT THE CLAIMANT WAS DISABLED, WERE SIGNIFICANT LIMITATION OF MOTION OF HIS LEFT HIP WITH NECESSITY FOR USE OF AN ASSISTIVE DEVICE TO AID IN WALKING WHICH PRECLUDED PERFORMANCE OF EVEN THE MINIMAL PHYSICAL REQUIREMENTS OF SEDENTARY WORK.

5.     AS OF APRIL 1998, THE MEDICAL EVIDENCE ESTABLISHES THAT THERE WAS IMPROVEMENT IN HIS MEDICAL CONDITION AND THAT IMPROVEMENT WAS RELATED TO HIS ABILITY TO WORK.

6.  THE MEDICAL EVIDENCE ESTABLISHES THAT THE CLAIMANT CURRENTLY HAS "SEVERE" IMPAIRMENTS SECONDARY TO RESIDUALS OF HIS LEFT HIP FRACTURES AND SURGERIES (20 CFR §§ 404.1520(C) AND 416.920(C)).

7.  THE MEDICAL EVIDENCE ESTABLISHES THAT THE CLAIMANT DOES NOT HAVE AN IMPAIRMENT OR COMBINATION OF IMPAIRMENTS WHICH MEETS OR EQUALS THE SEVERITY OF IMPAIRMENT LISTED IN APPENDIX 1, SUBPART P, REGULATIONS NO. 4.

8.  THE UNDERSIGNED FINDS THE CLAIMANT'S ALLEGATIONS REGARDING HIS LIMITATIONS ARE NOT TOTALLY CREDIBLE FOR THE REASONS SET FORTH IN THE BODY OF THE DECISION.

9.  AS OF APRIL 1998 AND CONTINUING THROUGH THE DATE OF THIS DECISION, THE CLAIMANT HAS HAD THE RESIDUAL FUNCTIONAL CAPACITY FOR THE FULL RANGE OF SEDENTARY WORK.

10. THE CLAIMANT IS UNABLE TO PERFORM HIS PAST RELEVANT WORK WHICH REQUIRED MEDIUM EXERTION (20 CFR §§ 404.1565 AND 416.965).

11. THE CLAIMANT IS 44 YEARS OLD, DEFINED AS A "YOUNGER INDIVIDUAL" (20 CFR §§ 404.1563 AND 416.963).

12. THE CLAIMANT HAS A "LIMITED" EDUCATION (20 CFR §§ 404.1564 AND 416.964).

13. THE CLAIMANT'S PAST SKILLED WORK AS A CARPENTER PROVIDED HIM WITH SKILLS INCLUDING ABILITY TO READ BLUEPRINTS, USE TOOLS, AND PRESCRIBE MEASUREMENTS, WHICH ARE TRANSFERABLE TO SEDENTARY WORK (20 CFR §§ 404.1568 AND 416.968).

14. CONSIDERING THE TYPES OF WORK THAT THE CLAIMANT IS STILL FUNCTIONALLY CAPABLE OF PERFORMING IN COMBINATION WITH THE CLAIMANT'S AGE, EDUCATION AND WORK EXPERIENCE, VOCATIONAL EXPERT TESTIMONY AND RULE 201.26 OF THE MEDICAL-VOCATIONAL GUIDES SHOW THAT HE COULD

3

BE EXPECTED TO MAKE A VOCATIONAL ADJUSTMENT TO WORK THAT EXISTS IN SIGNIFICANT NUMBERS IN THE NATIONAL ECONOMY.   EXAMPLES OF SUCH JOBS INCLUDE WORK AS A TESTER, AN ORDER CLERK, A DISPATCHER, AND A CHECK CASHIER.

15.    THE CLAIMANT WAS NO LONGER UNDER A "DISABILITY," AS DEFINED IN THE SOCIAL SECURITY ACT, AS OF APRIL 1998 (20 CFR §§ 404.1520(G) AND 416.920(G)).

The Appeals Council denied Plaintiff's request for review on March 2, 2007, making the decision of the ALJ the final action of the Commissioner.  Plaintiff filed this action on April 27, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff was involved in an automobile accident in June 1994, in which he fractured his hip, ruptured his spleen, fractured ribs, and fractured his left fifth toe.  He was involved in another automobile accident in late 1998.  See Tr. 22.  On November 2, 1998, orthopedist Dr. John R. Scott of Lakelands Orthopaedic Clinic ("Lakelands") provided a prescription for Plaintiff to have a

4

hospital bed for a couple of weeks, noting that such a request was reasonable, as Plaintiff had undergone hip surgery (open reduction and internal fixation) two weeks earlier. Tr. 390. On December 8, 1998, Dr. Steven T. Carawan indicated that although Plaintiff was still having hip pain, x-rays revealed that the fracture was in good position. Tr. 389. On February 22 1999, x-rays revealed that Plaintiff's hip fracture had healed and while Plaintiff walked with a limp, he reported that his pain was much improved. Tr. 388. On June 9, 1999, Plaintiff was treated by Dr. John Scott of Lakelands for complaints of left elbow pain, which was diagnosed as bursitis. Tr. 387.

Dr. Roland Knight performed a consultative physical examination of Plaintiff on March 8, 2001. Tr. 303-306. Dr. Knight noted that Plaintiff smoked one pack of cigarettes per day and drank beer regularly. Plaintiff indicated that he suffered a stroke in 1996 and had a seizure problem since 1995, although he reported experiencing no seizures while taking medication. He stated that he spent most of his time watching television, and he also took care of an invalid relative. Dr. Knight noted that Plaintiff walked with a slight limp on the left side, but did not use a cane, crutch, or corset. Tr. 303-310.

Dr. Knight's examination revealed that Plaintiff had limited range of motion of his cervical spine, although flexion and extension were full; full range of motion in the joints of both upper extremities; absent ankle reflexes; normal knee reflexes; full range of motion in the joints of his lower extremities, although inversion on the left was limited five degrees; pelvis titled slightly to the left; level shoulders; full lumbodorsal motion in all planes, although flexion was limited to seventy degrees; the ability to toe and heel walk; and the ability to stoop approximately fifty percent. X-rays of Plaintiff's left hip revealed minimal flatting of the femoral head and some hypertrophic spurring. Dr. Knight opined that Plaintiff had early degenerative arthritis of his left hip. X-rays of

Plaintiff's lumbar spine showed mild narrowing of the lumbosacral joint, but were otherwise normal. Tr. 305.

Dr. Knight completed a "Medical Source Statement of Ability to do Work-related Activities (Physical)" in which he opined that Plaintiff could frequently lift and/or carry up to ten pounds; stand for at least two hours in an eight-hour workday; and that Plaintiff's ability to sit was unlimited. Tr. 307-310.

Plaintiff was treated by Dr. Vincent S. Toussaint (general practitioner) from June 8, 2001 through January 9, 2002, for complaints of back and leg pain. Dr. Toussaint's records consist primarily of copies of prescriptions written for Plaintiff. Tr. 318-324.

Plaintiff returned to Lakelands for the first time in three years in June 2002. He was diagnosed as suffering from degenerative joint disease in his right hip, early arthritic changes to the sacroiliac joint, and lumbar facet arthropathy at L4-5 and 5-1. A Medrol dosepack, Skelaxin, Naprosyn, and Darvocet were prescribed. Tr. 384-385. Plaintiff was next treated at Lakelands approximately eight months later, in January 2003. Plaintiff complained of groin, thigh, and hip pain. Dr. Charles Gray recommended that Plaintiff undergo left hip replacement, and Plaintiff indicated that he would call if he desired to proceed with the surgery.

Plaintiff was treated at the Ware Shoals Center for Family Medicine beginning on January 15, 2004. On that date, Plaintiff indicated to Dr. H. Coleman Robinson that he was not currently having any problems, but wanted his prescriptions refilled. Tr. 410. On February 19, 2004, Dr. S. Lindsey Clarke questioned whether Plaintiff really had a seizure disorder since she could find no record of the alleged impairment in Plaintiff's prior medical records, and wondered if Plaintiff was engaging in drug seeking behavior. Tr. 408. On March 19, 2004, Plaintiff was treated for

complaints of left shoulder pain, which Plaintiff thought was a torn rotator cuff.  X-rays in April

2004, however, revealed no significant abnormalities.  Tr. 400, 406-407.  Plaintiff did not return

until more than a year later, on May 3, 2005, when he indicated he had shoulder pain from caring

for his three-hundred pound father who had suffered a stroke.  Plaintiff requested refills on Xanax,

Lortab, and Soma.  Tr. 391.  It was noted that Plaintiff had not kept his appointments with the pain

center and that no refills on Xanax would be given.  Tr. 405.

After the ALJ's decision, Plaintiff submitted additional medical records to the Appeals

Council.  Included was a "questionnaire" completed by Dr. Gray of Lakelands on November 10,

2006, at the request of Plaintiff's attorney.  Dr. Gray opined that Plaintiff would be limited to

performing sedentary work, would have to rest more than two hours a day, and would miss an

average of four days of work per month.  He also opined that Plaintiff "most probably" was impaired

from April 1998 through November 2006.  Tr. 450.

At the hearing, Plaintiff claimed that he continued to be disabled as result of an automobile

accident, that he could not sit most of the time, tired easily, needed to lie down most of the time,

needed a left hip replacement, his back was "gone," he had a deteriorated disc, back surgery had

been recommended, and he had seizures at a rate between one per week to one every two to three

months.  Tr. 490-491.  Plaintiff stated that he went to the emergency room for treatment when he

experienced a seizure.  Tr. 492.

Plaintiff alleges that: (1) the Appeals Council erred by failing to make specific findings

regarding new evidence; (2) the ALJ erred by failing to fully and fairly develop the record,

specifically as to Plaintiff's mental impairments, especially where Plaintiff was not represented by

counsel; and (3) the ALJ erred in evaluating Plaintiff's pain and credibility.  The Commissioner

7

contends that substantial evidence supports the Commissioner's decision that Plaintiff's disability ceased in April 1998.

     A.    <u>Substantial Evidence</u>

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the objective medical evidence of record demonstrated that Plaintiff had experienced medical improvement that was related to his ability to work and thus he was not disabled after April 1998.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision that Plaintiff experienced medical improvement[1] it was related to Plaintiff's ability to work, Plaintiff was able to perform sedentary work as of April 1998, and Plaintiff was not disabled after April 1998 is supported by substantial evidence. At the time of the

---

[1]Medical improvement is defined as:
any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [claimant's] impairment(s).
20 C.F.R. §§ 404.1594(b)(1).

comparison point decision of May 17, 1995, Plaintiff showed significant limitation of his left hip and was unable to walk without an assistive device. Plaintiff, however, underwent successful resection of heterotopic bone of his left hip joint and by 1998 his range of motion and mobility had improved. See Tr. 21. Although Plaintiff was involved in another accident in late 1998, injuring his left hip again, the fractures healed well and Plaintiff attained full weight bearing status within a few months of his re-injury. By February 22, 1999, x-rays showed that the fracture was healed and Plaintiff was noted to be able to walk without an assistive device for short distances. Tr. 388. The ALJ's decision is supported by Dr. Knight's March 2001 examination, including x-rays showing that Plaintiff's hip fracture was well healed and that there was no significant abnormalities of Plaintiff's spine. Tr. 303-310.

Although Plaintiff complained of pain, there was no evidence that any of Plaintiff's physicians considered his impairments to be of disabling severity. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability). The ALJ's decision is supported by the lack of treatment Plaintiff sought for his allegedly disabling impairments. There is no evidence that Plaintiff sought medical treatment of any kind between March 1996 (Tr. 278) and February 1998 (Tr. 287); from February 1998 until October 1998 (Tr. 390), when he underwent surgery after re-injuring his left hip; between June 1999 (Tr. 387) and June 2001 (Tr. 318-324); and between January 2003 (Tr. 382) and January 2004 (Tr. 410). In addition, Plaintiff did not seek treatment from any of his orthopedic specialists for a period of more than three years, from February 1999 (Tr. 388) to June 2002 (Tr. 384). There is also no evidence that Plaintiff sought any kind of medical treatment after his request for continued prescriptions for Xanax was denied in May 2005 (Tr. 391, 405). See

9

Mickles v. Shalala, 29 F.3d 918, 919-921 (4th Cir. 1994)(failure to seek medical treatment may support a finding that a claimant's impairments are not of disabling severity).

The ALJ's decision is also supported by Plaintiff's activities of daily living which included doing limited housecleaning, walking for exercise, washing dishes, sweeping, vacuuming, cooking, shopping one time a week, reading the newspaper, listening to the radio, watching television, and using the internet. He also reported that he visited family members. On February 11, 1998, Plaintiff noted that he had moved from South Carolina to be with his sister who was going through a divorce. On January 15, 2004, Plaintiff reported he had moved from Florida to South Carolina because his father had suffered a stroke and needed help. In October 2004, Plaintiff reported that he was having problems with his shoulder because he was caring for his father who weighed 300 pounds. On February 19, 2004, Plaintiff reported that he was going to help his sister move to Texas. See Tr. 28-29, 287, 293-296, 347.

      B.      Mental Impairments/Duty to Develop the Record

Plaintiff alleges that the ALJ erred in not ordering an updated evaluation of Plaintiff's mental impairment and by relying on his own opinion to determine that Plaintiff's mental impairments (anxiety and depression) were not severe. The Commissioner contends that the ALJ properly determined that Plaintiff's mental impairment was not a severe impairment.[2]

---

[2]Although Plaintiff was not represented at the hearings before the ALJ, the ALJ informed Plaintiff of his right to be represented by an attorney or some other qualified person at the hearings, but Plaintiff stated that he wished to proceed without a representative. See Tr. 411, 459, 481-482. The ALJ inquired as to Plaintiff's age, education, past vocational experiences, daily activities, and impairments.

10

The ALJ specifically considered whether Plaintiff's mental impairments were severe and found that they were not as Plaintiff had shown no signs of significant depression of anxiety and there was no evidence of ongoing mental health treatment or the need for aggressive treatment. See Tr. 26-27.

On March 1, 1995, Dr. James E. Hall, a psychologist, performed a consultative examination of Plaintiff. Plaintiff reported a history of arrests for DUI and other criminal activities and stated that he continued to drink six to eight beers a day, but it never kept him from working in the past. Plaintiff acknowledged that he had no mental health treatment and he denied any mental health problems. Dr. Hall noted that Plaintiff had no unusual tremors or mannerisms; normal facial expression; good eye contact; a cooperative and friendly attitude; appropriate mood; normal train of thought; no indications of thought disorder; no delusions or hallucinations; no anxiety; no phobias or any kind of obsessive or compulsive behavior; he was well oriented to person, place, and time; his recent and remote memory was intact; and his concentration was adequate. Dr. Hall opined that there was no reason from the standpoint of mental status why Plaintiff could not work. Tr. 259-260.

As noted by the ALJ, with the exception of some periods of acute intoxication (December 1996 emergency treatment for lacerations for motor vehicle accident-Plaintiff was noted to be intoxicated and not knowing what happened), Plaintiff was consistently described as alert and fully oriented. Plaintiff's treating physician wrote in October 2004 (Tr. 393) that he showed intact judgment and intact recent and remote memory. Tr. 26. When Plaintiff reported to his new physicians that he had taken Xanax for two years, it was suspected that Plaintiff had drug-seeking behavior and a plan was implemented to wean Plaintiff from Xanax. Tr. 408, 410.

11

Plaintiff testified at the January 2001 hearing that he had seen a psychiatrist (Tr. 467), but he gave no dates of treatment and did not provide any medical records or update his medical history (as specifically requested by the ALJ - see Tr. 469) to reflect this.  There are simply no medical records to show that Plaintiff had any severe mental impairments during the relevant time period.

C.     Appeals Council

Plaintiff alleges that the ALJ's failure to make specific findings regarding new evidence (specifically the November 2006 opinion of Dr. Gray) is reversible error.  The Commissioner contends that the Appeals Council adhered to the regulations by articulating specific findings for not accepting Plaintiff's "new" medical evidence.

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).  Evidence is new if it is not duplicative or cumulative.  Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990).  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

Here, the Appeals Council did not err in its consideration of the "new" evidence and in not granting Plaintiff's request for review.  In the memo denying Plaintiff's request for review, the Appeals Council specifically noted (Tr. 6):

> The [ALJ] only ruled on the issue of the April 1998 cessation.  This later evidence [i.e., the "Questionnaire" completed by Dr. Gray in November 2006] provided by your representative is not material to the issue of [] whether your disability continued as of April 1998.

Plaintiff, citing <u>Harmon v. Apfel</u>, 103 F. Supp. 2d 869 (D.S.C. 2000), appears to argue that the Appeals Council erred by failing to articulate the reasons for not changing the decision based on Dr. Gray's November 2006 opinion.  In <u>Harmon</u>, the Honorable David C. Norton, United States District Judge, remanded a case to the Commissioner to articulate the reasons for rejecting new evidence so that the reviewing court could understand the weight the Commissioner attributed to the new evidence.   Here, however, Gray's November 2006 opinion is not "material."  The medical records indicate that Dr. Gray examined Plaintiff for the first time in June 2002, more than four years after the period in question.  The November 2006 opinion was not issued until eight years after the time in question and over three years after the last time that Dr. Gray examined Plaintiff (January 2003).  <u>See</u> <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001)(ALJ did not err in considering a year delay between physician's diagnosis and opinion of disability and the absence of documentation of symptoms).

Further, in unpublished cases, the Fourth Circuit found that the Appeals Council need not give detailed reasons for finding that new evidence does not provide a basis for changing the ALJ's decision.  <u>See</u> <u>Freeman v. Halter</u>, 15  Fed. Appx. 87, 2001 WL 847978 at *2 (4th Cir. July 27, 2001); <u>Hollar v. Comm'r of the Soc. Sec. Admin.</u>, 194 F.3d 1304, 1999 WL 753999 at *1 (4th Cir. Sept. 23, 1999); <u>see</u> <u>also</u> <u>Jackson v. Barnhart</u>, 368 F. Supp. 2d 504, 508, n. 2 (D.S.C. 2000)("there is no requirement that the Appeals Council 'articulate its own assessment of the additional evidence' in its decision to deny review.").

D.    <u>Credibility</u>

Plaintiff alleges that the ALJ erred in evaluating his credibility and pain because the ALJ relied almost exclusively on Plaintiff's minimal activities and lack of specific findings to reject

Plaintiff's pain, ignoring medical opinions, aggravating and relieving factors, and other required factors. The Commissioner contends that the ALJ properly considered Plaintiff's subjective complaints by examining the medical evidence, the medical opinions, Plaintiff's wide range of activities, and discrepancies in Plaintiff's claims.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's determination that Plaintiff's subjective complaints were less than fully credible is supported by substantial evidence. The ALJ's decision is supported by the medical record and Plaintiff's activities of daily living, as discussed above. Further, the ALJ noted many discrepancies in the record (see Tr. 25-26) which support his findings. See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)(ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a whole); SSR 96-7p (one strong indication of the credibility of an individual's

14

statements is their inconsistency with other information in the case record).  Plaintiff claimed to suffer from extreme pain and functional limitations (Tr. 490-491), but admitted that he cared for his father, who weighed three-hundred pounds and had suffered from a stroke.  Tr. 391.  He claimed to suffer from seizures as often as once a week (Tr. 490-491), but his own treating physician noted that there was no evidence of this in Plaintiff's medical records and questioned whether Plaintiff was engaging in drug seeking behavior (Tr. 408).  Plaintiff testified that when he suffered from his frequent seizures he went straight to the emergency room each time (Tr. 491), but there are no such supporting records in the medical record.   Plaintiff claims he suffered a stroke in 1997 (Tr. 454), but there is no evidence in the record of a stroke or any treatment for such.


## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence.  This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra.  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R.  McCrorey
United States Magistrate Judge

August 28, 2008
Columbia, South Carolina